**Affirmed and Opinion filed May 4, 2021.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-19-00922-CV

---

## 4922 HOLDINGS, LLC AND HORIZON UNITED GROUP INTERNATIONAL, LLC, Appellants/Cross-Appellees

## V.

## SALVADOR RIVERA D/B/A RIVERA'S COMMERCIAL, Appellee/Cross-Appellant

---

**On Appeal from the 189th District Court
Harris County, Texas
Trial Court Cause No. 2017-30658**

---

## O P I N I O N

This appeal arises from a contract dispute between a subcontractor and an owner/general contractor following a construction renovation project. A jury found that both parties materially breached the contract, but that the owner/general contractor breached first and that its breach was not excused. The trial court signed a judgment awarding the subcontractor $3,875 in breach-of-contract damages found

by the jury, $52,300 in attorney's fees (plus conditional appellate attorney's fees), and pre- and post-judgment interest.

Both parties appeal. In three issues, the owner/general contractor asserts that no legally or factually sufficient evidence supports: (1) the jury's damages finding in the subcontractor's favor; (2) the jury's finding that the owner/general contractor breached the contract first; and (3) the trial court's award of attorney's fees to the subcontractor.

The subcontractor presents two cross-issues. First, the subcontractor contends the trial court erred in awarding only $3,875 in contract damages when the jury found a larger amount—$17,775—represented the value of its unpaid labor in response to a separate lien-foreclosurequestion. Second, the subcontractor urges that the trial court should have awarded pre-judgment interest at 18%, instead of 5.5%, because the jury found that the owner/subcontractor failed to promptly pay for the work performed.

We conclude that legally and factually sufficient evidence supports the verdict and the judgment, and we overrule the owner/general contractor's three issues. We overrule the subcontractor's issues because it failed to preserve them in the trial court. Accordingly, we affirm the trial court's judgment.

## Background

Appellants Horizon United Group International, LLC and 4922 Holdings, LLC (collectively, "Horizon")[1] hired Salvador Rivera d/b/a Rivera Commercial ("Rivera") to perform "structural repairs and upgrades" to church property located in Houston. In November 2014, Horizon and Rivera signed a subcontract agreement

---

[1] The parties do not distinguish between Horizon and 4922 Holdings, so we refer to them collectively as "Horizon."

(the "Contract") with a price of $121,000. Generally, the original scope of work included demolition, framing, truss repairs, ceiling repairs, interior drywall repairs and painting, and exterior painting. Two written and signed change orders or addenda altered the Contract terms. Together, these orders changed the Contract price to a maximum of $139,000.[2]

Horizon was to pay Rivera periodically in an amount equal to the value of the work performed and approved by Horizon, less a retainage equal to ten percent of the amount Rivera requested.

Based on Horizon's alleged failure to pay all Contract amounts due, Rivera sued Horizon for breach of contract, quantum meruit, prompt payment violations, and lien foreclosure. Horizon countersued Rivera for fraudulent lien and breach of contract based on Rivera's allegedly shoddy workmanship and failure to complete the Contract's work scope.

A two-day jury trial included testimony from Rivera's owner, Salvador Rivera, and his son, Brian, who worked on the project and handled paperwork and communications with Horizon. The parties agree that work proceeded and Horizon paid Rivera for its work up to approximately January or February 2016, when Horizon told Rivera to stop work. According to Salvador and Brian, the entire scope of work—including the first and second change orders—had been completed as of February 2016, and the only task remaining was exterior painting, which was just beginning when they were told to stop. Brian explained that Horizon halted the job because a lack of waterproofing on the exterior concrete block walls led to interior leakage problems.

_____

[2] The $139,000 price included a potential $5,000 bonus if Rivera completed the second change order's scope timely. The parties disputed whether Rivera completed the second change order.

3

According to Brian, Horizon asked Rivera to waterproof the exterior concrete masonry, a task the parties refer to as applying "block filler." Brian and Salvador testified that block filler was not part of the original work scope, so Rivera provided an additional proposal for it. The court admitted a document labeled "Additional #3," which provided for Rivera to "apply waterproofing all around exterior wall" in exchange for an additional $7,750. This document was not signed by either Rivera or Horizon, but Salvador said that Horizon's superintendent verbally approved the block-filler work over the phone. Horizon's position was that block filler is much like paint primer and was included within the original work scope as part of the exterior painting. In any event, it is undisputed that Rivera completed the block-filler work and invoiced Horizon for $7,750 (less retainage of $750) on April 21, 2016. Horizon did not pay Rivera for the block-filler work. After Brian and Salvador completed the block filler, they did not resume or complete the exterior painting because they had been told to stop.

The parties agree that Horizon paid Rivera a total of $118,100 for work performed up to February 2016. The parties also agree that Horizon withheld $13,900 as retainage. Rivera claims it is owed $13,900 for the retainage and $7,750 for the block-filler work. Brian filed a lien against the property for $21,650, reflective of these two amounts.

Horizon believed that Rivera failed to complete the work scope and inadequately performed certain tasks. On cross-examination, Brian acknowledged that Rivera had not met some contractual obligations, such as providing daily written reports, obtaining inspections (although Brian stated, "Horizon has always done the inspections for us"), securing permits for some items (such as an interior stage that Rivera built as part of the second change order), and building steps leading to the stage front as contemplated by the second change order's work scope. Brian testified

4

that Horizon never informed Rivera that its work was incomplete or that any part of the work was deficient and needed repair.

Another task Horizon asserted Rivera either failed to perform or performed deficiently was exterior painting, which was included in the original work scope. Brian and Salvador acknowledged that no deductive change order removed the exterior painting from the work scope. However, Horizon told Rivera to stop work as the exterior painting began, and Rivera's February 2016 invoice noted that exterior painting remained to be performed. As the invoice indicates, the exterior painting would cost $7,000 but Rivera was not requesting payment for that work. The February 2016 invoice was in writing and signed by Horizon's project manager, David Pratt, who approved it subject to a later adjustment.

Brian also acknowledged that Rivera did not have a signed change order regarding the block-filler work, but he testified that Horizon approved the work over the phone. Brian said that change orders did not need to be in any specific form.

Horizon took the position that Rivera's deficient performance was remediable. Scott Jones, an estimator for Horizon, was Horizon's only witness. Jones explained that Horizon asked him to use specialized software commonly used in the construction industry to estimate the cost of remedying or completing the work. Jones submitted and discussed a report regarding allegedly incomplete or defectively performed items in Rivera's work scope. According to Jones, the total reasonable and necessary cost to complete or remedy Rivera's work would be $49,750. Additionally, Jones opined that the block-filler work was part of Rivera's original scope to paint the building's exterior.[3] Jones also opined that Rivera was

---

[3] The relevant line item on the Contract's scope of work attachment states: "[d]o painting all interior & exterior walls, doors, door frames, trim, and ceiling for entire project. Do not paint Mural Wall."

5

not entitled to the second change order's $5,000 bonus because Rivera had not completed the change order's scope. Jones explained that Rivera already had been paid more than it was owed because it failed to complete the work. On cross-examination, Jones acknowledged that this was the first time he had been assigned to determine whether a project had been properly completed. His traditional role, instead, was to assist, at a project's front-end, with determining the job's cost.

Although Jones identified $49,750 as the total reasonable and necessary cost to remedy or complete Rivera's work, this figure was an estimate because the project was "still not finished" and Horizon had not yet actually incurred any costs in remedying or completing the work. Jones agreed that his estimate was based on photographs he took in October or November 2017 and the project status at that time—approximately eighteen months after Rivera left the project. He agreed that he had not spoken to any of Horizon's project managers or superintendents associated with this job. Nor had he examined any project documentation, such as emails, invoices, or payments made. He asked for project drawings, but they were not given to him. Additionally, Jones was not aware whether other subcontractors—or Horizon itself—had ever worked on the project, either during Rivera's work or afterward. Jones testified that Rivera was given the opportunity to complete the project "multiple times."

In rebuttal to Jones's testimony, Salvador testified that several other subcontractors worked on the job site. He also disputed several, but not all, of the estimates included in Jones's report.

After both parties rested, the trial court held a charge conference. The parties stipulated that Rivera "substantially performed all of [its] obligations in agreement with Horizon and 4922 Holdings." After the parties so stipulated, Horizon moved for a directed verdict on the ground that Rivera failed to prove the reasonable and

necessary costs to complete the project under a substantial performance theory.[4] The trial court denied the motion.

The jury found that both Rivera and Horizon materially breached the contract, but Horizon breached first; that Horizon's breach was not excused; and that $3,875 would "fairly and reasonably compensate Rivera for damages" resulting from Horizon's breach. Also, the jury found that Rivera's lien "substantially represents" the amount of money owed by Horizon, and in conjunction with that question, that the value of Rivera's labor/material provided for this project but not paid by Horizon was $17,775. The jury further found that Horizon failed to promptly pay Rivera for properly performed work.

Rivera moved for judgment on the jury's verdict, seeking $21,650 in damages and 5% pre- and post-judgment interest. Horizon filed a motion for judgment notwithstanding the verdict ("JNOV") and to disregard several jury findings.

The parties agreed to submit attorneys' fees to the court by affidavit. In its initial request, Rivera sought $81,750 in trial attorney's fees, plus conditional appellate fees. Though Rivera's counsel submitted an affidavit supporting his requested fees, the attached billing records were completely redacted. After Horizon objected, Rivera supplemented his attorney's fee request and provided more detailed and unredacted billing records, as well as two additional affidavits. The trial court signed findings of fact that Horizon owed $52,350 in reasonable and necessary attorney's fees. In determining this amount, the trial court struck through or reduced

---

[4] *E.g.*, *Vance v. My Apartment Steak House of San Antonio, Inc.*, 677 S.W.2d 480, 482-83 (Tex. 1984) ("[W]hen a breaching contractor brings suit to recover for his substantial performance and the owner alleges remediable defects in the construction, the contractor is required to prove that he did substantially perform, the consideration due him under the contract, and the cost of remedying the defects due to his errors or omissions."). Based on *Vance*, Horizon argued that proving reasonable and necessary remediation costs is a required element of Rivera's contract claim for which Rivera bears the burden.

the hours billed on several of Rivera's fee statement line items.

The trial court signed a final judgment in favor of Rivera, awarding $3,875 in damages and $52,350 in attorney's fees, with conditional appellate fees, and 5.5% pre- and post-judgment interest.

Horizon timely appealed, and Rivera cross-appealed.

## Issues Presented

Horizon presents three issues for our review: (1) whether legally and factually sufficient evidence supports the jury's damages award; (2) whether legally and factually sufficient evidence supports the jury's finding that Horizon breached the Contract first; and (3) whether legally and factually sufficient evidence supports the attorney's fee award.

In its cross-appeal, Rivera presents two issues: (1) whether the trial court erred in awarding only $3,875 in damages, when the jury found that the reasonable value of Rivera's unpaid work was $17,775; and (2) whether the trial court erred in awarding pre-judgment interest at a 5.5% rate rather than an 18% rate consistent with the jury's finding that Horizon failed to pay promptly for the work performed.

## Horizon's Issues

### A. Standard of Review – Legal and Factual Sufficiency

When reviewing the legal sufficiency of the evidence, we consider the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). We must credit favorable evidence if a reasonable fact finder could and disregard contrary evidence unless a reasonable fact finder could not. *See id.* at 827. To sustain a challenge to the legal sufficiency of the evidence supporting a jury finding, the reviewing court must find that: (1) there is a complete lack of

8

evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) there is no more than a mere scintilla of evidence to prove a vital fact; or (4) the evidence conclusively established the opposite of a vital fact. *Volkswagen of Am., Inc. v. Ramirez*, 159 S.W.3d 897, 903 (Tex. 2004).

When reviewing the factual sufficiency of the evidence, we examine the entire record, considering all the evidence both in favor of and contrary to the finding. *Vast Constr., LLC v. CTC Contractors, LLC*, 526 S.W.3d 709, 723 (Tex. App.—Houston [14th Dist.] 2017, no pet.). When a party attacks the factual sufficiency of an adverse finding on an issue on which it had the burden of proof, the party must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001) (per curiam). And when a party attacks the factual sufficiency of the evidence pertaining to a finding on which the party did not have the burden of proof, we may set aside the finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Bennett v. Comm'n for Lawyer Discipline*, 489 S.W.3d 58, 66 (Tex. App.—Houston [14th Dist.] 2016, no pet.). We consider all the evidence, but we will not reverse the judgment unless "the evidence which supports the [ ] finding is so weak as to [make the finding] clearly wrong and manifestly unjust." *Star Enter. v. Marze*, 61 S.W.3d 449, 462 (Tex. App.—San Antonio 2001, pet. denied). The amount of evidence necessary to affirm is far less than the amount necessary to reverse a judgment. *GTE Mobilnet of S. Tex. Ltd. P'ship v. Pascouet*, 61 S.W.3d 599, 616 (Tex. App.—Houston [14th Dist.] 2001, pet. denied).

We apply these standards mindful that this court is not a fact finder. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex. 1998). The trier of fact is the sole judge of witnesses' credibility and the weight afforded their testimony. *GTE*

9

*Mobilnet*, 61 S.W.3d at 615-16; *see City of Keller*, 168 S.W.3d at 819-20. Therefore, we may not pass upon the witnesses' credibility or substitute our judgment for that of the fact finder, even if the evidence would also support a different result. *GTE Mobilnet*, 61 S.W.3d at 615-16.

**B.    Legally and factually sufficient evidence supports the jury's finding that Horizon breached the Contract first.**

We take Horizon's issues out of order and consider first whether legally and factually sufficient evidence supports the jury's finding that Horizon breached the Contract first. We reproduce the relevant jury findings here:

## QUESTION NO. 1

Did Horizon and/or 4922 Holdings fail to comply with the Agreement?

You are instructed that a failure to comply must be material. The circumstances to consider in determining whether a failure to comply is material include:

1. The extent to which he injured party will be deprived of the benefit which it reasonably expected;

2. The extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;

3. The extent to which the party failing to perform or to offer to perform will suffer forfeiture;

4. The likelihood that the party failing to perform or to offer to perform will cure his failure, taking into account the circumstances including any reasonable assurances;

5. The extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

Answer "Yes" or "No":

**ANSWER:**        <u>*Yes*</u>

10

## QUESTION NO. 2

Did Rivera fail to comply with the Agreement?

You are instructed that a failure to comply must be material. The circumstances to consider in determining whether a failure to comply is material include:

1. The extent to which he injured party will be deprived of the benefit which it reasonably expected;

2. The extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;

3. The extent to which the party failing to perform or to offer to perform will suffer forfeiture;

4. The likelihood that the party failing to perform or to offer to perform will cure his failure, taking into account the circumstances including any reasonable assurances;

5. The extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

Answer "Yes" or "No":

**ANSWER:**        Yes


If you answered "Yes" to Question No. 1 and Question No. 2, then answer the following question. Otherwise, do not answer the following question.

## QUESTION NO. 3

Who failed to comply with the Agreement first?

"Horizon and/or 4922 Holdings"

         or

"Rivera"

**ANSWER:**        Horizon and/or 4922 Holdings

When as here two parties materially breach a contract, determining which party breached first becomes important because "[i]t is a fundamental principle of

11

contract law that when one party to a contract commits a material breach of that contract, the other party is discharged or excused from further performance." *Bartush-Schnitzius Foods Co. v. Cimco Refrigeration, Inc.*, 518 S.W.3d 432, 436 (Tex. 2017) (per curiam); *Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 198 (Tex. 2004) (per curiam). Rivera asserted prior material breach, and the jury found in Rivera's favor on that issue. Horizon challenges the legal and factual sufficiency of the evidence supporting that finding.[5]

Rivera claimed that Horizon materially breached the Contract when it failed to pay the full amount owed, including the $13,900 retainage. Horizon does not dispute that it failed to pay the retainage but insists its duty to pay was never triggered because Rivera never completed the work. Horizon points to Article 5(f) of the Contract, which, Horizon says, requires the contract balance to be paid only after "project completion."[6] Essentially, Horizon is arguing that it did not materially breach the Contract at all by failing to pay Rivera the retainage.

Horizon is correct that under Article 5, which governs payment, the retainage would not be payable until after all four of the specified conditions occurred—full completion and acceptance of the work, payment by the owner, and completion of

---

[5] Horizon preserved its issue in the trial court by filing a JNOV motion asking the trial court to disregard the jury's finding that Horizon breached first and a motion for a new trial challenging the legal and factual sufficiency of the evidence to support this jury finding. *See, e.g.*, *Daniels v. Empty Eye, Inc.*, 368 S.W.3d 743, 748-49 (Tex. App.—Houston [14th Dist.] 2012, pet. denied) (explaining that, in a case tried to a jury, a motion to disregard preserves legal sufficiency challenge and a motion for new trial preserves a factual sufficiency challenge).

[6] ARTICLE 5. PAYMENT

. . .

(f) The balance of contract funds (final payment), less offsets of Contractor, shall be payable (7) days after the last of the following: (i) the Project is completed; (ii) the Project is accepted by Owner and Architect; (iii) Owner pays the full contract price to contractor; and (iv) Subcontractor has fully performed all of its obligations hereunder, including the furnishing of close-out documents.

close-out documents. However, other contract provisions, namely those in Article 7, permitted Horizon to terminate the Contract—at is sole discretion and for its convenience—before project completion. In that circumstance, Article 7(h) granted Rivera the right to receive payment for all work actually performed in accordance with the Contract through the date of notice of termination.[7]

Salvador and Brian testified that Horizon instructed Rivera to stop work on the project *before* Rivera completed the exterior painting and that Rivera had completed all other tasks except for the exterior painting when Horizon told it to stop. According to Salvador, Horizon "didn't want to pay no more." A reasonable fact finder could have accepted this testimony and found that Horizon terminated the Contract for convenience, as was its right under Article 7(g). Upon termination, Rivera was obligated to "immediately stop work" and became entitled to receive the "costs incurred for work actually performed" less any "costs of (or credited for) correction." It is undisputed that Horizon did not pay Rivera any of the retainage it withheld for the work that Rivera performed before termination. Thus, the jury

---

[7] ARTICLE 7.   TERMINATION FOR DEFAULT, TERMINATION FOR CONVENIENCE

. . .

(g) Contractor may terminate Subcontractor for Contractor's convenience (and without the requirement to prove a default under this contract) in any event, including in the event that circumstances change such that it is in Contractor's interest to terminate this Subcontract. . . . In the event of a Termination for Convenience, Subcontractor shall immediately stop work and shall be entitled to payment for all work performed under (and in accordance with) this Subcontract, together with any direct job-site costs related to the termination. . . .

(h) In the event of termination under Article . . . 7(g), Subcontractor shall have the right to payment only of costs incurred for work actually performed upon (and in accordance with) the Subcontract through the date of notice of termination (plus a reasonable mark-up not to exceed 10% for overhead and profit upon this work less (i) amounts paid to date, (ii) any costs of (or credited for) correction and (iii) Contractor's offsets. . . .

reasonably could have found that Horizon materially failed to comply with the Contract by not paying Rivera some or all of the retainage withheld for work actually performed through the date of termination.[8] We conclude this finding is supported by legally sufficient evidence.

Horizon's reliance on Article 5(f) as support for its contention that it never owed a duty to pay the retainage because the work was never completed is misplaced. If Horizon terminated for convenience before project completion, the payment conditions specified in Article 5(f) would never materialize. Because the jury reasonably could have found a termination for convenience occurred, the provisions in Article 7(h) apply.

In any event, Horizon says it could not have breached the Contract first because Rivera did not complete the scope of work at issue and a "reasonable factfinder could not disregard the inevitable fact that Rivera's poor workmanship and failure to complete predated (and, in fact, resulted in) Horizon's refusal to pay." To the contrary, the jury reasonably may have found that Rivera materially failed to comply with the Contract because the exterior painting was never completed, but that Rivera's failure occurred after Horizon's material breach. Horizon told Rivera to stop work on the exterior painting and to apply the block filler, which Rivera did, as all agreed. The jury reasonably could have found that Horizon failed to make any further payments after Rivera completed the block-filler work, and that Horizon instructed Rivera not to complete the exterior painting that Rivera was ready and willing to complete. Thus, the jury reasonably could have found that Horizon's failure to pay amounts due up to the time of termination pre-dated Rivera's failure

---

[8] Horizon asserts that the costs of correcting Rivera's work exceeded the amount of retainage withheld and thus it owed Rivera nothing. We address this point in connection with our damages discussion, *infra*.

to complete the exterior painting. Once Horizon refused to pay for work performed through the time of termination, Rivera was legally excused from any obligation to complete the exterior painting. *See Mustang Pipeline Co.*, 134 S.W.3d at 196.

As to Rivera's poor workmanship allegedly occurring prior to termination—such as failing to complete the stage as required by the second change order or failing to provide various paperwork or obtain inspections/permits—the jury reasonably could have determined that those failures were not material. Thus, the jury could have found that Rivera did not materially breach the Contract before Horizon materially breached the Contract.

We conclude that the above evidence is legally sufficient to support the jury's finding that Horizon materially breached the Contract first. Moreover, examining the entire record, including all the evidence both in favor of and contrary to the finding, we also conclude the evidence supporting the finding is not so weak as to make the finding clearly wrong and manifestly unjust. *See Bennett*, 489 S.W.3d at 66; *Star Enter.*, 61 S.W.3d at 462. This was a short trial with only three witnesses. In either a legal or factual sufficiency review, issues of credibility and reconciling conflicts within the evidence are for the jury. *See, e.g.*, *Harris County v. Coats*, 607 S.W.3d 359, 381 (Tex. App.—Houston [14th Dist.] 2020, no pet. h.). In determining that Horizon materially breached the Contract first, the jury apparently found Brian and Salvador credible and resolved any conflicts in Rivera's favor, which was its prerogative. And although the jury found that Rivera materially breached the contract as well, the jury could have determined that Horizon's failure to pay Rivera the amount due once Horizon terminated the Contract occurred before any material breach by Rivera. *E.g.*, *Mustang Pipeline Co.*, 134 S.W.3d at 199-200.

In sum, viewing the evidence either in favor of the jury's finding or in a neutral light, the evidence enabled reasonable and fair-minded people to reach this verdict,

and it is not so weak as to be clearly wrong and unjust. Because legally and factually sufficient evidence supports the jury's prior material breach finding, we overrule Horizon's second issue.

## C.    Sufficient evidence supports the jury's damages award.

Having concluded the evidence supports the jury's finding that Horizon materially breached the Contract first, we proceed to consider Horizon's evidentiary challenge to Rivera's damages. In its first issue, Horizon asserts that the jury's damages finding is unsupported by legally and factually sufficient evidence because Rivera failed to prove the remedial costs associated with correcting Rivera's deficient performance.[9]

During the trial, Rivera invoked the doctrine of substantial performance, which often applies in construction contract disputes like this one. As a general rule, "a party to a contract who is himself in default cannot maintain a suit for its breach." *Dobbins v. Redden*, 785 S.W.2d 377, 378 (Tex. 1990) (per curiam). In the construction context, however, a contractor who has substantially, though not fully, performed may still sue to enforce an agreement and recover damages for material breach. *See id.* Grounded in equity, the substantial performance doctrine allows a contractor who has substantially performed a construction contract to assert a breach of contract claim rather than rely merely on a claim for quantum meruit. *See Vance v. My Apartment Steak House of San Antonio, Inc.*, 677 S.W.2d 480, 481 (Tex. 1984); *Gentry v. Squires Constr., Inc.*, 188 S.W.3d 396, 403 n.3 (Tex. App.—Dallas

---

[9] Horizon preserved error on this issue in the trial court because it objected to submission of the breach of contract questions on the ground that Rivera failed "to meet its burden of proof in presenting evidence of the reasonable and necessary costs to complete [its] scope of work and remedy the defects" and thus was "entitled to no recovery." *See, e.g.*, *Daniels*, 368 S.W.3d at 748-49 (party preserves legal sufficiency challenge by objecting to submission of jury question). The trial court overruled Horizon's objection. Horizon also preserved its factual sufficiency challenge by raising it in a motion for new trial. Tex. R. Civ. P. 324(b).

2006, no pet.). The doctrine does not permit the contractor to recover the full consideration provided in the contract because, by definition, the doctrine recognizes that the contractor is in breach of the contract, though not materially so. *See Vance*, 677 S.W.2d at 482.[10] Although the contractor is allowed to sue on the contract, his recovery is decreased by the cost of remedying those defects for which he is responsible. *Vance*, 677 S.w.2d at 482.

A contractor seeking recovery on a substantial performance theory has the burden to (1) plead substantial performance, (2) prove that he did substantially perform, and (3) prove both the consideration due him under the contract and the cost of remedying the defects due to his errors or omissions. *Id.* at 482-83. Whether Rivera pleaded and proved substantial performance is not at issue because the parties stipulated that Rivera substantially performed. We focus on whether evidence exists showing the consideration due less remedial costs. The court instructed the jury consistently with *Vance* because it directed the jury to consider only the "unpaid contract price less the cost of completion and remedying the defects, if any." We measure the sufficiency of the evidence by the charge as given. *See Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue*, 271 S.W.3d 238, 254 (Tex. 2008); *TecLogistics, Inc. v. Dresser-Rand Grp., Inc.*, 527 S.W.3d 589, 595 (Tex. App.—Houston [14th Dist.] 2017, no pet.).[11]

Thus, we proceed to examine the record to determine whether the jury

---

[10] The doctrine assumes that if there has been substantial performance, the builder's breach is immaterial. *Gentry*, 188 S.W.3d at 403 n.3; *Bayer Corp. v. DX Terminals, Ltd.*, 214 S.W.3d 586, 599 n.11 (Tex. App.—Houston [14th Dist.] 2006, no pet.) ("[S]ubstantial performance generally permits a party to a contract that breaches nonmaterial terms (but has otherwise substantially performed) to sue the other party to the contract for breach.").

[11] We note the damages measure required by the substantial performance doctrine and given to the jury is, in this case, also consistent with the Contract terms, which upon a convenience termination entitled Rivera to payment for work performed less costs of correction.

17

reasonably could have awarded Rivera $3,875 in contract damages based on the evidence presented consistent with the court's instruction.

First, we consider the amount the jury reasonably may have assessed as the unpaid contract price for work performed up to the time Horizon terminated. Based on the testimony, the jury could have accepted that the total contract price was $139,000, if the jury believed that Rivera timely completed the second change order. Rivera acknowledged, however, that it did not complete the exterior painting after termination, and therefore it was not seeking to recover $7,000 for that work. Thus, the jury reasonably could have found that the contract price for work performed up to termination was $132,000 ($139,000 less $7,000).[12]

It was undisputed that Horizon paid Rivera $118,100. The total contract price less the amount paid equals $13,900 ($132,000 - $118,100 = $13,900). Thus, more than a scintilla of evidence exists to support a reasonable determination that the unpaid contract price was $13,900—the amount of retainage Rivera sought to recover.

To reach its damages award, the jury was instructed to deduct from the unpaid contract price "the cost of completion and remedying the defects, if any." Though the parties stipulated that Rivera substantially performed, there was evidence that Rivera's performance up to termination may have been deficient, requiring correction. Further, the jury reasonably may have determined that any deficiencies it believed occurred were immaterial and remediable. Horizon presented evidence through Jones that the reasonable and necessary cost to complete the work and remedy defects was $49,750. Because the jury awarded damages of $3,875, we may reasonably infer that the jury found that some of Rivera's work was deficient and

_____

[12] Rivera is not seeking damages for the block-filler work as part of its contract claim.

18

required correction; and we may further infer that the jury assessed the reasonable and necessary remedial costs to correct the deficiencies to be $10,025. The jury could have arrived at its damages award by deducting $10,025 from the unpaid contract price of $13,900 to find damages of $3,875.

Importantly, Salvador disputed Jones's assertion that some items were not performed or required correction.[13] Salvador also stated that the costs to complete some of the items Jones identified were much less than Jones's estimate. Horizon is critical of this testimony because it is not accompanied by evidence that Salvador's figures are reasonable and necessary. A party seeking to recover damages under a substantial performance theory has the burden to prove that the cost of remedying the defects due to his errors or omissions are reasonable and necessary. *McGinty v. Hennen*, 372 S.W.3d 625, 627-28 (Tex. 2012); *Vance*, 677 S.W.2d at 483. According to Horizon, it introduced the only evidence of reasonableness and necessity, and Rivera introduced none. For that reason, Horizon contends that the jury simply "could not have ignored" Jones's testimony. Because Jones said the reasonable and necessary cost to complete the work is $49,750, and because those costs exceed the contract price remaining unpaid, Horizon claims Rivera is entitled to no damages.

Horizon's argument presupposes that the jury was required to accept Jones's testimony and remedial cost figure in full and could not have found that remedial costs were less than Jones estimated. But this disregards the jury's prerogatives. "A jury has broad discretion to award damages within the range of evidence presented at trial." *MEMC Pasadena, Inc. v. Riddle Power, LLC*, 472 S.W.3d 379, 408 (Tex.

---

[13] For example, $30,000 of Jones's $49,750 estimate related to the anticipated cost of installing new sheetrock, insulation, taping, floating, and painting. But Salvador testified that Rivera completed that particular work.

App.—Houston [14th Dist.] 2015, no pet.). The evidence need not show exactly how the jury arrived at the specific amount awarded, nor is a jury tied to awarding damages exactly as requested by the injured party. *See id.* A jury is entitled to decide whether or how much of a witnesses' testimony to accept. *E.g.*, *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986) ("[T]he trier of fact is afforded considerable discretion in evaluating opinion testimony on the issue of damages."). Here, for instance, the jury may have discounted Jones's testimony based on Rivera's cross-examination. Jones acknowledged that Horizon had not actually incurred any costs in remedying or completing the work. And Jones's estimate was based on photographs taken eighteen months after termination and was not based on input from any of Horizon's project managers or superintendents associated with this job. *Cf. id.* (explaining that expert who had not seen house until nearly two years after leaking problems began could not testify as to the cost of repairs needed at time of leaks). Nor had Jones examined any project documentation, such as emails, invoices, or payments. Coupled with Salvador's testimony that Rivera actually completed many of the tasks Jones said remained uncompleted, the jury reasonably could have accepted some of Jones's testimony and rejected the rest.

The amount the jury may have assessed as reasonable and necessary remedial costs is within the range suggested by the evidence heard by the jury, regardless of which party introduced it. Thus, there exists more than a scintilla of evidence to support the jury's award of $3,875 in breach-of-contract damages. *See, e.g.*, *MEMC Pasadena, Inc.*, 472 S.W.3d at 409-10 (overruling plaintiff's challenge to evidentiary sufficiency of jury's damages award when the award fell within "broad range of possible damages amounts" supported by the evidence). Additionally, viewing all the evidence, we cannot say the jury's finding is so against the great weight and preponderance of the evidence as to be manifestly unjust. We conclude

20

the damages finding is supported by legally and factually sufficient evidence, and we overrule Horizon's first issue.

**D.  Sufficient evidence supports the trial court's attorney's fee award.**

In Horizon's third and final issue, it asserts that Rivera failed to provide sufficient evidence to support an award of attorney's fees, an issue the parties submitted to the court. Horizon complains that Rivera's three filings to prove its attorney's fees are inadequate because:

- the affidavits pay lip service to the *Andersen*[14] factors, but do not address them with sufficient particularity to allow any analysis;

- At least a quarter of Rivera's time entries are generalities (e.g., "trial preparation") insufficient to enable the necessary review of the particular services performed and the reasonable time required for doing them[;]

- Nearly $10,000 in fees sought by Rivera are for post-trial work which is not recoverable; and

- In "segregating" hours between defendants, Rivera improperly double-billed nearly all his hours (e.g., 4/9/19 – billing for 16 hours of trial in single day).

Generally, the award of attorney's fees rests in the sound discretion of the trial court. *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 761 (Tex. 2012). To establish entitlement to attorney's fees, a prevailing party has the burden to prove his fees are both reasonable and necessary. *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 487 (Tex. 2019). The factors guiding the fact finder in determining the reasonableness and necessity of attorney's fees include:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly;

---

[14] *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997).

(2) the likelihood . . . that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

*Id.* at 494. Without evidence of these factors, "the fact finder has no meaningful way to determine if the fees sought are in fact reasonable and necessary." *Id.*

Rivera's counsel, Derek U. Obialo, submitted several affidavits and copies of billing records in support of his claim for attorney's fees. In his first affidavit, signed April 12, 2019, Obialo stated that his rates were $300 per hour for his services and $150 per hour for paralegal services. Obialo opined, "The fees charged in this case are customarily charged in this area for the same or similar services for an attorney with my experience, reputation, and ability, considering the amount in controversy, the time limitations imposed, and the results I obtained." The initial invoice attached to this affidavit was heavily redacted, however, such that the description of services was removed. The total time billed on this redacted invoice (as of April 12, 2019) was 238 attorney hours and 69 paralegal hours, for a total of $81,750.

In July, Obialo supplemented his original submission with another affidavit and an unredacted billing statement. In this second affidavit, Obialo stated:

I have reviewed the attached legal services invoice and the hours charged in this case and it is my professional opinion that the legal fees associated with this litigation are reasonable, necessary and customary in Harris County and surrounding counties. My opinion was acquired by a review of the case file and the various pleadings in this case and

22

documents relevant to this case, as well as confidential attorney client privileged information. I also base my opinion on similar charges in other cases charged by me and other similarly situated attorneys in similar locations in Harris County.

Obialo's invoice attached to this affidavit was unredacted and provided descriptions for each line item billed. As well, for many line items, the invoice included hours for both Horizon and 4922 Holdings listed separately. The total hours billed (as of July 24, 2019) for working on Rivera's claims against Horizon increased to 269 attorney hours and 71 paralegal hours. This invoice additionally reflected 232.50 attorney hours associated with Rivera's claims against 4922 Holdings. Obialo's invoice indicated total fees of $91,350 related to Horizon and $80,400 related to 4922 Holdings.

Finally, in August, Obialo filed another supplemental affidavit. In this affidavit, he provided more detail about his fees and the services he provided:

3. It is my opinion that the $300 per hour I charged as an attorney in this case is reasonable, the $150 per hour charged by my firm for Maria Medina's legal assistance services performed under my supervision is also reasonable fee charged for paralegal services for similar tasks and similarly skilled and experienced person performing paralegal work for more than one year in Harris County. This is also informed by the fact that Defendants' attorneys' hourly rates are in a range that is much higher than the hourly rate charged by Plaintiff's attorney.

4. Plaintiffs legal fees incurred against Defendants Horizon United ($91,350) and 4922 Holdings ($80,400) and the total billable hours of 340 against both Defendants in this case are reasonable and compare favorably with Defendants' legal fees of $72,391 and billable hours of 273. I have been working on this case about a year before Defendants hired their current law firm and Ms. Norman; and I believe I have performed much more intensive and extensive work in this case than all Defendants' attorneys put together. This is informed from the review of the invoices submitted by the Defendants' attorneys and comparison with the work that I and my paralegal, Maria Medina, performed in this case.

23

5. Beyond the work performed up to trial, Defendants have continued to file motions challenging the verdict and requesting a judgment in their favor which necessitated more legal work for me and my legal assistant. From a comparison of the invoices submitted by Plaintiffs attorney and Defendants' attorneys, the difference between the total legal fees billed to Defendants (approx. $70,000) and the total legal fees billed to Plaintiff within the same time period (approx. $80,000) is comparable with the industry.

6. Plaintiffs legal fees and the billable hours were properly segregated between the parties. As stated in my earlier attorney fees' affidavit, the billable hours were segregated between the two defendants, but the issues – claims, defenses and counterclaims in this case – were so inextricably intertwined that segregation among them is futile. All efforts expended in addressing the counterclaims by Defendants were an advancement of the claims of Plaintiff, and vice versa.

7. On four instances when this case came close to trial that necessitated Plaintiffs intense preparation for trial, my paralegal and I intensely performed trial preparation work to get ready for an impending trial and those efforts were reflected in my fee statement as "trial preparation." These efforts entailed conducting mock trials and strategy meetings, drafting voir dire, examination questions and opening and closing statements, research and arguments, on my part, and preparing trial binders, exhibits, trial props and displays, and participating in mock trials on the part of my legal assistant. Defendants also billed for "trial preparation" work as well, which were reflected in their attorney fee invoices, supporting the fact that these are reasonable and known details of work performed in readiness for trial.

8. Lastly, in addition to prosecuting Plaintiffs claim of $21,650, I had to defend against Defendants' counterclaim of almost $50,000. I intensely prepared for and attended 4 hours of informal mediation at Defendants' offices at Defendants' request. I also prepared for and attended 4 hours of deposition of Plaintiff. The tactics and strategy adopted by both defendants in this case made it more difficult and needed extensive and intensive work on my part. The final result obtained in a favorable jury verdict supports the reasonableness of the fees charged by my firm in this case, and a review of Defendants' legal fees' invoice of almost $70,000 also demonstrate the reasonableness and necessity of the legal fees charged by my firm to the Plaintiff in this case.

"Sufficient evidence includes, at a minimum, evidence of (1) particular services performed, (2) who performed those services, (3) approximately when the services were performed, (4) the reasonable amount of time required to perform the services, and (5) the reasonable hourly rate for each person performing such services." *Rohrmoos Venture*, 578 S.W.3d at 498. In our view, although they are not a model of clarity, Obialo's multiple affidavits and billing records fulfill these requirements. Horizon's concerns about double billing and hours billed for unrecoverable post-trial work are addressed by the trial court's findings of fact, wherein the court reduced the hours billed and removed potential double billing issues. The trial court combed through Obialo's invoice, reducing many of the hourly amounts reflected, removing all hours reflected for services connected with Rivera's claims against 4922 Holdings, and reducing by half the amount billed for paralegal hours. *See, e.g.*, *El Apple I, Ltd.*, 370 S.W.3d at 763 ("Charges for duplicative, excessive, or inadequately documented work should be excluded."). All told, the trial court reduced the attorney's hours reflected in the invoice to 156.75. The court found that "$52,350 is owed in reasonable and necessary attorney's fees by Defendants" and that "[s]egregation of the claims was not reasonably possible as they were intertwined."

Horizon has not challenged these findings on appeal, and we generally defer to the trial court's findings because it "possesses a superior understanding of the case and the factual matters involved." *See id.* at 764. The affidavits and billing records provided in this case provided sufficient information for the trial court's calculation.

For the foregoing reasons, we overrule Horizon's third issue.

## A. Rivera is not entitled to a larger damages award.

In its first cross-issue, Rivera asserts that the trial court erred in awarding $3,875 in damages, rather than $17,775, which the jury determined was the value of the labor and materials provided by Rivera for which it had not been paid. Rivera contends that its lien claim was "comprised of damages for breach of the contract and damages for the value of work done outside of the contract for which Rivera was not paid." Thus, according to Rivera, "the trial court should have entered judgment for the higher jury damage award of $17,775 for [the] value of unpaid labor and services," disregarding "the lesser jury award of $3,875 for contractual damages." Although Rivera provides no legal authority for this proposition in its opening brief,[15] Rivera asserted in its reply brief and again during oral argument that these damages should have been awarded under a quantum meruit theory.

However, the jury's $17,775 finding is predicated on the jury's finding regarding the propriety of Rivera's lien.[16] Thus, this "damages" finding was predicated on the lien-foreclosure question, not on a quantum meruit liability question.[17] Accordingly, these damages are not available under a quantum meruit

---

[15] Thus, we could overrule this issue based on briefing waiver. *See* Tex. R. App. P. 38.1(i); *Harrison v. Reiner*, 607 S.W.3d 450, 468 (Tex. App.—Houston [14th Dist.] 2020, pet. denied).

[16] To prevail on a claim to foreclose a constitutional mechanic's lien, a lienholder must prove the performance of the labor and the existence of the debt. *San Antonio Credit Union v. O'Connor*, 115 S.W.3d 82, 107-08 (Tex. App.—San Antonio 2003, pet. denied). In today's case, the only finding supporting the existence of a debt is the jury's determination that Horizon failed to comply with the Contract, with associated damages of $3,875. *Cf. Wallace Roofing, Inc. v. Benson*, No. 03-11-00055-CV, 2013 WL 6459757, at *12 (Tex. App.—Austin Nov. 27, 2013, pet. denied) (mem. op.) (explaining that appellant would have been entitled to recover only breach-of-contract damages on lien foreclosure claim, but because opposing parties' damages exceeded the amount of appellant's damages, trial court did not abuse its discretion in denying appellant's lien foreclosure claim).

[17] Although Rivera sought jury questions on quantum meruit and objected to the trial court's refusal to include these questions in the jury charge, Rivera does not assign error to the

theory of recovery because that theory was not included in the jury's charge. *See* Tex. R. Civ. P. 279.

We overrule Rivera's first cross-issue.

## B. Rivera has waived his prompt pay interest complaint.

In its second cross-issue, Rivera contends the trial court erred by awarding pre-judgment interest at only 5.5%, when such interest should accrue at 18% in accordance with the jury finding that Horizon did not promptly pay for properly performed work.

In its motion for entry of judgment, Rivera requested pre-judgment interest "at the annual rate of five percent (5%) per annum." He submitted a proposed judgment reflecting the 5% pre-judgment interest rate. Later, Rivera responded to Horizon's JNOV motion. In that response and for the first time, Rivera included in the prayer portion of his response a request for pre-judgment interest "at the annual rate of 18% per annum." He attached a second proposed judgment reflecting pre-judgment interest at an 18% rate. However, the trial court signed Rivera's first proposed judgment, which awarded pre-judgment interest at the rate of 5%.[18] Rivera did not seek to modify the judgment.

Generally, to preserve error for our review, the complaining party must raise the complaint before the trial court by way of a timely request, objection, or motion and either obtain an express or implicit ruling or pursue the request until the trial

absence of a quantum meruit question. "With the exception of fundamental errors, a court of appeals must not reverse a trial court's judgment in the absence of properly assigned error." *Brumley v. McDuff*, 616 S.W.3d 826, 830 (Tex. 2021).

[18] The trial court struck through the "5% per annum" and instead awarded Rivera 5.5% per annum, the judgment interest rate at the time of judgment. *See* Tex. Fin. Code § 304.003. Rivera asserts in its reply brief that its request for prompt pay violation interest "was argued at a hearing before the trial court," but we have no such hearing included in our record.

court refuses to rule. *See* Tex. R. App. P. 33.1(a). Filing a motion with the trial court clerk does not establish that the motion was properly presented to the trial court. *Johnson v. Mohammed*, No. 03-10-00763-CV, 2013 WL 1955862, at *4 (Tex. App.—Austin May 10, 2013, pet. dism'd) (mem. op.); *In re Blakeney*, 254 S.W.3d 659, 662 (Tex. App.—Texarkana 2008, orig. proceeding); *see also Burnett v. Carnes Funeral Home, Inc.*, No. 14-12-01159-CV, 2014 WL 2601567, at *5 (Tex. App.— Houston [14th Dist.] June 10, 2014, no pet.) (mem. op.). "A trial court is not required to consider or rule on a motion that has not been called to its attention." *Johnson*, 2013 WL 1955862, at *4.

Rivera never moved for the award of prompt pay interest. Rivera's only post-verdict mention of prompt pay interest was a brief reference in the prayer of his response to Horizon's post-verdict motions and in an attached exhibit. Rivera did not file any post-judgment motion to modify the award of interest. Under these circumstances, we conclude that he has waived his complaint regarding prompt pay interest.

We overrule Rivera's second cross-issue.

## Conclusion

Having overruled Horizon's issues and Rivera's cross-issues, we affirm the trial court's judgment.

/s/    Kevin Jewell
        Justice

Panel consists of Chief Justice Christopher and Justices Jewell and Poissant.

28